

# IN THE
# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NEW YORK

---

**DONDRE FOSTER**
**A#063-735-118**
*Petitioner,*

- v. -

**DIRECTOR BROPHY, IN HIS OFFICIAL CAPACITY AS DIRECTOR OF BUFFALO FIELD OFFICE OF U.S IMMIGRATION AND CUSTOMS ENFORCEMENT, DIRECTOR HARVEY, IN HIS OFFICIAL CAPACITY AS OFFICIAL IN CHARGE OF BUFFALLO FEDERAL DETENTION FACILITY.**
*Respondent.*

---

## VERIFIED PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241

---

**"PRO-SE"**

# TABLE OF AUTHORITIES

**Cases:**

*Demore v. Kim,* 538 U.S. 510, 516-17 (2003);
*Zadvydas v. Davis,* 533 U.S. 678, 687-88 (2001).
*Medley v. Decker,* No. 18-CV-7361 (S.D.N.Y. Dec. 11, 2019)
*Singh v. Holder,* 638 F.3d 1196, 1202 (9th Cir. 2011)
*Gutierrez–Chavez v. INS,* 298 F.3d 824, 829 (9th Cir.2002)
*Matos v. Barr,* 509 F.Supp.3d 3, 11 (W.D.N.Y. 2020).
*Wang v. Ashcroft,* 320 F.3d 130, 140 (2d Cir. 2003)
*Araujo-Cortes v. Shanahan,* 35 F. Supp. 3d 533, 538 (S.D.N.Y. 2014)
*Cave v. East Meadow Union Free Sch. Dist.,* 514 F.3d 240, 249 (2nd Cir. 2008)
*Honig v. Doe,* 484 U.S. 305, 327 (1988)
*Foucha v. Louisiana,* 504 U.S. 71, 80 (1992)
*Plyler v. Doe,* 457 U.S. 202, 210 (1982)
*Reno v. Flores,* 507 U.S. 292, 306 (1993)
*Jennings v. Rodriguez,* 583 U.S. 281, 138 S. Ct. 830, 200 L. Ed. 2d 122 (2018)
*Carol William Black v. Thomas Decker,* No.20-3224 (2024).
*Ricardo Rodriques v. Merrick Garland* No. EDCV 23-0216-JPR, (2024)
*Hemans v. Searls,* No. 18-CV-1154, (W.D.N.Y. Feb. 27, 2019)
*Mathews v. Eldridge,* 424 U.S. 319, 335 (1976).
*Hechavarria v. Sessions,* No.15-CV-1058 (LJV), (W.D.N.Y. Nov. 2, 2018)
*Sophia v. Decker,* No. 19 Civ. 9599, (S.D.N.Y. Feb. 14, 2020
*Ranchinskiy v. Barr,* 422 F. Supp. 3d 789, 797 (W.D.N.Y. 2019)
*Bermudez Paiz v. Decker,* No. 18-CV-4759 (S.D.N.Y. Dec. 27, 2018)
*Lett v. Decker,* 346 F. Supp. 3d 379, 387 (S.D.N.Y. 2018)
*Gonzales Garcia v. Barr,* No. 6:19-CV-6327-EAW, (W.D.N.Y. Feb. 3, 2020)
*Garcia v. Rosen,* 513 F. Supp. 3d 329 (W.D.N.Y. 2021)
*Velasco Lopez v. Decker,* No. 19-2284-cv (2020)
*Jules v. Garland,* No. 21-CV-6342 CJS, 2021
*Campbell v. Barr,* 387 F. Supp. 3d 286, 300 (W.D.N.Y. 2019)
*Black v. Dir. thomas Decker,* 103 F4th 133 92d Cir. 2024)
*Ramon Rodriguez v. Christopher Shanahan,* 84 F Supp 3d 251 (S.D.N.Y.2015)

**Statutes**

28 U.S.C. § 2241
28 U.S.C. § 1651

**District Court Habeas Corpus Decision**

*Hemans v. Searls,* No. 18-CV-1154, (W.D.N.Y. Feb. 27, 2019)
*Medley v. Decker* No. 18-CV-7361 (S.D.N.Y. Dec. 11, 2019)
*Matos v. Barr,* 509 F.Supp.3d 3, 11 (W.D.N.Y. 2020)
*Ricardo Rodriques v. Merrick Garland* No. EDCV 23-0216-JPR, (2024), United States District Court For The Central District of California.
*Hechavarria v. Sessions,* No.15-CV-1058, (W.D.N.Y. Nov. 2, 2018)
*Barrinton Walker v. Jeffrey Searls* No.23-CV-140-LJV (W.D.N.Y. April 23, 2024)
*Black v. Dir. thomas Decker, 103 F4th 133 92d Cir. 2024)*
*Quintanilla Mejia v. Barr* No.20-cv-6434-FPG (W.D.N.Y Oct. 7, 2020)

# INTRODUCTION

1. My name is **Dondre Foster** ("Petitioner").

2. Since I have entered the United States, I have been accorded the following immigration status: **Legal Permanent Resident**.

3. I am currently being detained by the Department of Homeland Security ("DHS") at the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York. I have been in immigration detention since approximately **March 15th, 2024**.

4. I was served with a Notice to Appear ("NTA") on **March 15, 2024**, charging me removable based on my conviction(s) for **SALE OF NARCOTICS**.

5. As such, I have been subject to mandatory immigration detention for approximately **9 months** while my removal proceedings are pending.

6. Without intervention from this Court, my detention will continue, as my immigration case is ongoing.

7. When a person has ongoing immigration proceedings, immigration detention without a bond hearing is considered unreasonably prolonged in violation of the Due Process Clause of the Fifth Amendment if such detention exceeds six months.

8. DHS has not yet conducted a bond hearing to determine whether my continued detention is justified.

9. My immigration detention is unreasonably prolonged because I have been detained for more than six months without a bond hearing, and my detention will continue without a bond hearing unless this Court grants me relief.

10. Once it is established that immigration detention is unreasonably prolonged, the burden shifts to the government to prove by clear and convincing evidence that my continued detention is warranted either because I am dangerous or because I pose a flight risk.

11. Accordingly, I respectfully request that this Court issue a writ of habeas corpus and order the Respondent to release me from their custody because the Respondent cannot establish by clear and convincing evidence that my continued

detention is warranted, and continuing to detain me violates my constitutional due process rights under the Fifth Amendment. In the alternative, I respectfully request this Court order a bond hearing where the Respondent bears the burden to prove by clear and convincing evidence that my continued detention is necessary to prevent flight or danger to the community.

## PARTIES

12. Petitioner, **Dondre Foster** is detained at Buffalo Federal Detention Facility.

13. Respondent Director Brophy is sued in his official capacity as the Officer-in-Charge of the Buffalo Federal Detention Facility, at which Petitioner is currently detained.

## JURISDICTION AND VENUE

14. Jurisdiction is proper under the U.S. Constitution, *U.S. CONST. art. I § 9, cl. 2 ("Suspension Clause"),* and federal statutes *28 U.S.C. § 1331* (federal question); *28 U.S.C. §2241* (habeas corpus); and *28 U.S.C. § 1651* (All Writs Act).

15. Additionally, this Court has jurisdiction to grant injunctive relief pursuant to the Declaratory Judgment Act, *28 U.S.C. § 2202.*

16. Federal district courts have jurisdiction to hear habeas corpus claims by noncitizens challenging their detention by DHS, *see Demore v. Kim, 538 U.S. 510, 516-17 (2003); Zadvydas v. Davis, 533 U.S. 678, 687-88 (2001).*

17. Furthermore, while *8 U.S.C. § 1226(e)* bars judicial review of the discretionary denial of bond, it does not bar constitutional challenges to the bond hearing process. *See, e.g., Medley v. Decker, No. 18-CV-7361 (AJN), 2019 WL 7374408, at \*3 (S.D.N.Y. Dec. 11, 2019)* (federal district courts have habeas jurisdiction to hear challenges to constitutional adequacy of bond hearing procedures); *see also Singh v. Holder, 638 F.3d 1196, 1202 (9th Cir. 2011)* ("[C]laims that the [bond] process itself was constitutionally flawed are 'cognizable in federal court on habeas . . . .'") *(quoting Gutierrez–Chavez v. INS, 298 F.3d 824, 829 (9th Cir.2002)).*

18. Venue is proper in the U.S. District Court for the Western District of New York under *28 U.S.C. § 1391* because the Defendant is in this District; I am currently being detained within this District at the Buffalo Federal Detention Facility in Batavia, New York; and a substantial part of the events giving rise to the claims in this action took place in this District.

## STATUTORY FRAMEWORK

19. Congress has authorized DHS to mandatorily detain non citizens who are convicted of certain crimes without the opportunity for a bond hearing. *28 U.S.C. § 1226(c).*

20. The statute itself is silent on whether DHS is authorized to detain such noncitizens subject to mandatory detention for the entirety of their removal proceedings, regardless of how long such proceedings may take. See id.

21. When a person has ongoing immigration proceedings, immigration detention without a bond hearing is considered unreasonably prolonged in violation of the Due Process Clause of the Fifth Amendment if such detention exceeds six months. *Matos v. Barr, 509 F.Supp.3d 3, 11 (W.D.N.Y. 2020).*

## STANDARD

### A. Writ of Habeas Corpus

22. Congress has also authorized federal district courts "to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties*{2020 U.S. Dist. LEXIS 14} of the United States,'" Wang v. Ashcroft, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)),* including claims by non-citizens challenging their detention without bail. *Demore v. Kim, 538 U.S. 510, 516-17, 123 S. Ct. 1708, 155 L. Ed. 2d 724 (2003) Zadvydas, 533 at 690.*

## EXHAUSTION OF REMEDIES

23. There is no statutory exhaustion requirement for a petition challenging immigration detention. *See Araujo-Cortes v. Shanahan, 35 F. Supp. 3d 533, 538 (S.D.N.Y. 2014).*

24. I am not required to exhaust administrative avenues to challenge my detention because the statutory authority subjects me to mandatory detention and, as such, does not provide me with any meaningful administrative options with which to challenge my detention. *See 8 U.S.C. § 1226(c);* see also *Cave v. East Meadow Union Free Sch. Dist., 514 F.3d 240, 249 (2d Cir. 2008)* ("The exhaustion requirement is excused when exhaustion would be futile because the administrative procedures do not provide an adequate remedy.") *(citing Honig v. Doe, 484 U.S. 305, 327 (1988)).*

# LEGAL ARGUMENT

## Procedural Due Process Requires that I Be Released or, at Minimum, Afforded a Constitutionally Adequate Bond Hearing at Which the Government Must Justify My Continued Detention

25. The U.S. Supreme Court's opinion in *Zadvydas v. Davis* stands for the proposition that "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *533 U.S. at 690 (citing Foucha v. Louisiana, 504 U.S. 71, 80 (1992))*. The Fifth Amendment's Due Process Clause forbids the federal government from depriving any "person . . . of . . . liberty . . . without due process of law." *U.S. CONST. amend. V. Prolonged* detention requires due process protections for individuals, even those whose "presence in this country is unlawful." *Plyler v. Doe, 457 U.S. 202, 210 (1982)*. Thus, as the Court noted, "[a] statute permitting indefinite detention of [a noncitizen] would raise a serious constitutional problem." *Zadvydas, 533 at 690.*

26. By subjecting noncitizens like myself to mandatory immigration detention, *8 U.S.C. § 1226(c)* permits indefinite detention, thus raising the very serious constitutional problem that the Court had cautioned against in Zadvydas.

27. Although the Supreme Court ruled in Demore that mandatory detention pending removal proceedings is not unconstitutional per se, the Court left open the question of whether the duration of such mandatory detention is subject to constitutional constraints. Such constitutional constraints can be found in the Fifth Amendment of the U.S. Constitution, which, as the Court recognized in Demore, "entitles [noncitizens] to due process of law in deportation proceedings." *538 U.S. at 523 (quoting Reno v. Flores, 507 U.S. 292, 306 (1993))*.

28. While the Supreme Court held in *Jennings v. Rodriguez, 583 U.S. ___, 138 S. Ct. 830 (2018),* that *§ 1226(c)* does not require bond hearings in prolonged detention cases as a matter of statutory construction, it did not express any views on whether the U.S. Constitution itself requires a bond hearing, leaving it to the lower courts to address the issue of what process is due when detention is unreasonably prolonged.

29. I believe my detention was unreasonably delayed because the government failed to recognize the "when......release" clause, by not detaining me (an alien) subject to mandatory detention immediately after my release from non-DHS custody. DHS as already deprived the public of the benefits of mandatory

detention and proved that I am not a danger to the community or flight risk. I was allowed to walk free for four years and eight months, when Congress believes that "aliens presents such a presumptive risk of danger or flight that they should be immediately confined upon their release from non-DHS custody". Moreover, once I left non-DHS custody, the need for a presumption of danger or risk of flight was reduced or became nonexistent. ***Khoury, 3 F. Supp. 3d at 888***. Like Section 236(c) of Immigration and Nationality Act, however the TPCR required that this smaller subset of criminal non-citizens be taken into INS custody "when......released" from criminal custody. ***IIRIRA § 303(b)(3)(A)*** (text in historical notes following *8 U.S.C. § 1226 (Supp. 1998)).*

30. Congressional intent also supports the "when . . . released" clause's plain meaning. First, Congress enacted Section 236(c) out of two primary concerns: that non-citizens convicted of specific crimes might (1) commit additional crimes, and thus pose a danger to their community, and (2) avoid appearing at their immigration proceedings to evade deportation, and thus pose a flight risk. *See Demore, 538 U.S. at 518-22, 531*. To address these concerns, {2015 U.S. Dist. LEXIS 29} Congress targeted a specific subset of non-citizens whom it predicted would be dangerous and elusive. And it sought to create a pipeline for their transfer "directly from jailhouse to immigration detention" to ensure that they would not return to the community. ***Castaneda II, 952 F. Supp. 2d at 316; Khoury, 3 F. Supp. 3d at 888***. Under this detention scheme, there is an irrebuttable presumption that this specific subset of non-citizens (who have committed an enumerated offense and been detained "when . . . released" from criminal custody) are categorically dangerous and a flight risk. As a result, their detention is mandatory. For all other non-citizens in removal proceedings, however, the presumption is rebuttable - and individual bond hearings allow them their opportunity to make their case. In so drafting the statute, Congress struck a balance. Recognizing the constitutional issues at play, it prioritized a narrow subset of individuals whose Due Process rights could permissibly be encroached upon. "The evidence Congress had before it certainly supports the approach it selected . . . ." ***Demore, 538 U.S. at 528.***

31. The Plain Meaning of "When" The Court's analysis begins with the text of the statute. The Oxford English Dictionary's first definition of "when" (in its non-interrogative use) is "at the (or a) time at which; on the (or an) occasion on which." The Oxford English Dictionary, (last visited January 14, 2015). Supplementing its definition, the dictionary provides: "in reference to a definite actual occurrence or fact, chiefly with verb in past tense: At the time that, on the occasion that. . . ." Id. (emphasis supplied). "'[W]hen' includes the characteristic of 'immediacy,' referring in its primary conjunctive sense, to action or activity occurring 'at the time that' or 'as soon as' other action has ceased or begun." *Waffi v.*

*Loiselle, 527 F. Supp. 2d 480, 488 (E.D. Va. 2007)* (citing 20 The Oxford English Dictionary 209 (2d ed. 1989); The American Heritage Dictionary{2015 U.S. Dist. LEXIS 17} of the English Language (4th ed. 2000)), abrogated by *Hosh, 680 F.3d 375. See also Martinez-Done, 2014 U.S. Dist. LEXIS 143453, 2014 WL 5032438, at \*7* ("In everyday English, 'when' clearly 'connote[s] immediacy.'") (alteration in original) *(citing Straker, 986 F. Supp. 2d at 354); Castaneda I, 769 F.3d at 44* (noting that "when" means "as soon *{84 F. Supp. 3d 259}* as," as in, "I'll call you when I get there") (citing American Heritage Dictionary 2032 (3d ed. 1992)).

32. When non-citizens such as I, Dondre Foster was apprehended 4 years and 8 months after my release from criminal custody, rather than "when" I was released, however, Congress's{2015 U.S. Dist. LEXIS 30} presumptions become rebuttable. In the time since the my release, "I either demonstrated myself to be a danger to the community or I have not. In other words, given either myself or the government the fodder for a bond hearing." *Khoury, 3 F. Supp. 3d at 888*. Further, any "presumption of dangerousness and flight risk is eroded by the years I lived peaceably in the community." *Castaneda I, 769 F.3d at 43. See Saysana, 590 F.3d at 17-18* ("[I]t stands to reason that the more remote in time a conviction becomes and the more time after a conviction an individual spends in a community, the lower his bail risk is likely to be."). *{84 F. Supp. 3d 264} See also infra n.11 (citing Khoury, 3 F. Supp. 3d at 888)*. Accordingly, due process requires "adequate procedural protections" and a "special justification" for physical detention that "outweigh[ ] the 'individual's constitutionally protected interest in avoiding physical restraint.'" *Zadvydas, 533 U.S. at 690-91 (Hendricks, 521 U.S. at 356)*. Congress provided that special justification and narrowed the class of individuals subject to it by applying Section 236(c) to a limited number of individuals who are transferred from criminal custody into DHS custody at or around the time they are released. That special justification, however, no longer applies for non-citizens such as I, Dondre Foster who have, by virtue of being in his community for four years and eight months, rebutted Congress's otherwise acceptable presumption of dangerousness, recidivism, and flight risk. Holding me without a bond hearing now raises constitutional concerns that would not have been present had I been apprehended "when . . . released." In his concurrence in Demore v. Kim, Justice Kennedy recognized that a statute may serve its purpose{2015 U.S. Dist. LEXIS 35} generally but still fail to justify the detention of a specific individual: particularly, "[w]ere there to be an unreasonable delay by the INS in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons." *538 U.S. at 532-33 (Kennedy, J., concurring)*.

## My Detention Has Become Unreasonably Prolonged

33. In the wake of Jennings, the Western District of New York ("WDNY") has developed a two-step inquiry for evaluating procedural due process challenges to prolonged immigration detention. *Hemans v. Searls, No. 18-CV-1154, 2019 WL 955353, at \*5 (W.D.N.Y. Feb. 27, 2019).*

34. In the first step of the inquiry, the Court considers whether the detention has been unreasonably prolonged by weighing several distinct factors. Id. If the Court finds that the detention was unreasonably prolonged, it proceeds to step two of the inquiry, which involves identifying what process is due by considering the factors outlined in *Mathews v. Eldridge, 424 U.S. 319, 335 (1976). Hemans, 2019 WL 955353, at \* 5., see also Hechavarria v. Sessions, No.15-CV-1058 (LJV), 2018 WL 5776421, at \*7-9 (W.D.N.Y. Nov. 2, 2018),Carol William Black v. Thomas Decker, No.20-3224 (2024), Ricardo Rodriques v. Merrick Garland No. EDCV 23-0216-JPR, (2024).* If the government has failed to provide the detained person with the procedural safeguards dictated by the Mathews factors, then the detained person's continued detention violates procedural due process. *Hechavarria, 2018 WL 5776421 at \*8-9.*

35. To determine whether one's immigration detention is unreasonably prolonged, courts in this district have adopted the following multi-factor test articulated in *Cabral v. Decker*:

> *[T]he length of time the petitioner has been detained; (2) the party responsible for the delay; (3) whether the petitioner has asserted defenses to removal; (4) whether the detention will exceed the time the petitioner spent in prison for the crime that made him removable; (5) whether the detention facility is meaningfully different from a penal institution for criminal detention; (6) the nature of the crimes committed by the petitioner; and (7) whether the petitioner's detention is near conclusion.*

*331 F. Supp. 3d 255, 261 (S.D.N.Y. 2018).*

36. The first factor, the length of immigration detention, is the most important factor. *Ranchinskiy v. Barr, 422 F. Supp. 3d 789, 797 (W.D.N.Y. 2019) (quoting Bermudez Paiz v. Decker, No. 18-CV-4759 (GHW) (BCM), 2018 WL 6928794, at \*13 (S.D.N.Y. Dec. 27, 2018)).*

37. Courts in the Second Circuit have "generally been skeptical of prolonged detention of removable immigrants, without process, lasting over six months," *Ranchinskiy, 422 F. Supp. 3d at 797 (quoting Lett v. Decker, 346 F. Supp. 3d 379, 387 (S.D.N.Y. 2018)).*

38. Moreover, in Demore, the Supreme Court heavily relied on the average length of detention for people detained under *§ 1226* as support for its constitutionality, reasoning that a six-week detention was the average and that a five-month detention counts as an outlier. *538 U.S. at 530.*

39. I have been detained since **March 15th, 2024,** and have been detained for about **9 months**. Since the length of my detention exceeds six months, the first factor weighs in my favor when determining whether my detention has become unreasonably prolonged.

40. The second factor considered is the question of which party is responsible for the detention being unreasonably prolonged. *Cabral, 331 F. Supp. 3d at 261.*

41. While a detained person who is found to be "abusing the processes provided to him" would bear the responsibility of their detention being prolonged, a detained person who "simply made use of the statutorily permitted appeals process" cannot be made responsible for his prolonged detention. *Hechavarria v. Sessions, 891 F. 3d 49, 56 n.6 (W.D.N.Y. 2018); see also Hechavarria, 2018 WL 5776421 at *7.*

42. An immigration judge has never ordered me deported.

43. **After being denied relief, I appealed my case to the Board of Immigration Appeals ("BIA") on approximately December 04, 2024.**

44. **Factor two weighs in my favor as I have made use of the "statutorily permitted appeals process". Id.**

45. **Factor three weighs in my favor since I have asserted the following defense(s) to my removal: by filing an I-589 application for "Asylum, Withholding of Removal and Convention Against Torture (CAT).**

46. **Factor four weighs in my favor because the length of my immigration detention exceeds 9 months, the amount of time I spent in prison for the conviction(s) that made me removable.**

47. Factor five weighs in my favor because my detention at the BFDF is not

meaningfully different from detention at a penal institution because it comprises many of the same restrictions that often accompany penal detention, including restrictions on movement and expectations to follow orders of presiding facility officers. *See Ranchinskiy, 422 F. Supp. 3d at 799* (finding, absent rebuttal from the government, that detention at the BFDF is akin to criminal incarceration); *Gonzales Garcia v. Barr, No. 6:19-CV-6327-EAW, 2020 WL 525377, at* *We are being subjected to a strict locked down in a 2 man cell for 16 hours out of 24 hours every day this happen in three housing Units (A-1, A-2 and B-1). We are only allow 8 hours out while more than an hour out of that 8 hours is for meal time which can not be count as a meaningful recreaction time.
(W.D.N.Y. Feb. 3, 2020) enforcement denied on other grounds sub nom. *Gonzales Garcia v. Rosen, 513 F. Supp. 3d 329 (W.D.N.Y. 2021)* ("[T]he reality is that the [BFDF] houses [noncitizens] against their will with various restrictions on their freedom of movement. Thus, while perhaps not akin to a maximum-security prison . . . the facility does not seem meaningfully different from at least a low or medium-security penal institution for criminal detention.").

48. Factor six weighs in my favor I was convicted of sale of narcotics a deportable offense. I got sentence to about 7 months in jail, and I been in immigration detention for about 9 months is like serving time for the same conviction.

49. Factor seven weighs in my favor because my case is ongoing.

50. Since a majority of the factors in the multi-factor test weigh in my favor, particularly factor one pertaining to the excessive length of my detention, there is sufficient evidence to conclude that my detention is unreasonably prolonged.

51. Once the Court has found that detention is unreasonably prolonged, it moves to the second step of the two-step inquiry, which asks what specific due process rights should be afforded. *Hechavarria, 2018 WL 5776421 at *7-9*. Because my detention has been unreasonably prolonged and I am being deprived of a liberty interest, due process demands My release or, at minimum, that I receive a constitutionally adequate bond hearing

## Because My Detention Has Been Unreasonably Prolonged and I Am Deprived of a Liberty Interest, Due Process Demands My Release or, at Minimum That I Recieved a Constitution Adequate Bond Hearing

52. Due process demands "adequate procedural protections" to ensure that the government's asserted justification for physical confinement "outweighs the

'individual's constitutionally protected interest in avoiding physical restraint.'" *Zadvydas, 533 U.S. at 690 (quoting Kansas v. Hendricks, 521 U.S. 346, 356 (1997)).*

53. In *Mathews v. Eldridge,* the Supreme Court provided a three-factor test to weigh the constitutionality of administrative procedures: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *424 U.S. 319, 335 (1976).* Each of the Mathews factors weighs heavily in favor of release or, at minimum, requiring a constitutionally adequate bond hearing once detention under *8 U.S.C. § 1226(c)* has become prolonged.

54. First, the importance and fundamental nature of an individual's liberty interest is well established. *See Zadvydas, 533 U.S. at 690* ("Freedom from imprisonment . . . lies at the heart of [] liberty . . . ."); *cf. Hechavarria, 2018 WL 5776421 at *8* ("[T]his Court finds little difference between Hechavarria's detention and other instances where the government seeks the civil detention of an individual to effectuate a regulatory purpose."). In Black/GM the Court explained that the interest 1226(c)-detained noncitizens hold "is themost significant liberty interest there is-the interest in being free from imprisonment." *Black,103F.4th at 151 (quoting Velasco Lopez v. Decker, 978 F.3d 842, 851 (2d Cir. 2020).* The Court noted that noncitizens detained under *8 U.S.C § 1226(c)* posses the same liberty interest as noncitizens detained under any other statue. See id. And, it highlighted that 1226(c)-detained noncitizens lack any administrative mechanisms by which they could challenge their detention. See id. Here, because Dondre Foster has been detained in civil immigration detention since on or about March 15,2024,Dondre Foster,too, possess the same liberty interest as Black and G.M.

55. Here, the fundamental nature of freedom weighs in favor of my release. I completed my criminal sentence on August 07,2019, and I have been detained by Respondent for about 9 months without any meaningful judicial review.

56. Second, the risk that my freedom will be erroneously deprived is significant. Crucially, I have no opportunity to challenge my detention because the statute mandates detention regardless of whether I am a flight risk or danger to the community. *See Jennings, 138 S. Ct. at 844* (discussing the use of "may [detain]" and "shall [detain]" in the context of *8 U.S.C. § 1226* and the requirement of detention when the statute uses "shall."). Also the Black Court found that there is a high risk of erroneous deprivation of rights for 1226(c)-detained noncitizens because there

are "almost nonexistent procedural protections in place for section 1226(c) detainees[.]" Id. at 152. The court observed that while 1226(c)-detained noncitizens posses due process protections in other adjacent domians-such as the ability to ask for Matter of Joseph hearings, which resolve whether they may be subjected to mandatory detention-those mechanisms are insufficient in covering over the deficient processes noncitizens possess for requesting their actual release. See id. The court thus concluded that 1226(c)-detained noncitizens are faced with even higher "risk[s] of erroneous deprivation" of their private liberty interests that 1226(a)-detained noncitizens. See id. Here, **Dondre Foster** has not received any mechanism that would ensure an impartial adjudication of his continued detention. Rather, the only review of **Dondre Foster** of continued detention has been by ICE. Therefore, **Dondre Foster** risk of erroneous deprivation is thus markedly highly.

57. Furthermore, any internal process at DHS to determine whether release is warranted is not subject to review or challenge. Thus, there is a significant risk of erroneous, unwarranted detention, and the deprivation of my liberty interests. *See e.g., Hechavarria, 2018 WL 5776421, at *8* ("[G]iven that the statute precludes any pre- or post-deprivation procedure to challenge the government's assumption that an immigrant is a danger to the community or a flight risk, it presents a significant risk of erroneously depriving [Petitioner] of life and liberty interests."); *see also Chi Thon Ngo, 192 F.3d 390, 398-99 (3d Cir. 1999)* ("To presume dangerousness to the community and risk of flight based solely on his past record does not satisfy due process. . . . [P]resenting danger to the community at one point by committing crime does not place [a petitioner] forever beyond redemption.").

58. Finally, the procedure I propose—namely, requiring that the DHS prove to this court or, in the alternative, an immigration judge, that my continued detention is justified—does not meaningfully prejudice the government's interest in detaining dangerous non citizens during removal proceedings. Instead, it serves just that purpose. See e.g., Hechavarria, 2018 WL 5776421 at *8 ("The government . . . contends that it has a regulatory interest in [petitioner's] detention pending removal based on his serious criminal history and risk of flight. This Court agrees that both of these interests may well be 'legitimate and compelling.' But those are the very interests that would be addressed at a detention hearing. So the government's continued assertion that **Dondre Foster** must be detained because he is dangerous simply begs the question and suggests exactly why a hearing is necessary.") (internal citations omitted).The Second Circuit determined that the competing government interest inpreventing a 1226(c)-detained noncitizen from receiving a bond hearing is minimal. The court outlined that the government possesses two primary interests in denying mandatorily-detained noncitizens from

receiving a bond hearing at this stage: ensuring the noncitizen"s appearance at proceedings and protecting the community from danger. See id. at 153-54. the court, however, indicated these interests are not undercut by the relief Mathews provides in a procedural sense. It assessed "at any ordered bond hearing, the IJ would assess on an individualized basis whether the noncitizen presents a flight risk or a danger to the community, as IJ routinely do for other noncitizen detainees." Id. Since the procedural protection that flows out of the first two Mathews factors does not overburden the government's interest at the third factor, the court found relief reasonable and necessary.

59. As the Second Circuit articulated in *Velasco Lopez v. Decker*, once detention has become prolonged, it is in everyone's—the petitioner, the Government, and the public's—interest for the petitioner to receive a constitutionally adequate custody redetermination hearing. *See 978 F.3d 842, 857 (2d Cir. 2020)* ("The irony in this case is that, in the end, all interested parties prevailed. The Government has prevailed because it has no interest in the continued incarceration of an individual who it cannot show to be either a flight risk or a danger to his community. **Dondre Foster** has prevailed because he is no longer incarcerated. And the public's interest in seeing that individuals who need not be jailed are not incarcerated has been vindicated.").

60. In the immigration context, the only two valid justifications for detention are to mitigate the risks of danger to the community and to prevent flight. *See Demore, 538 U.S. at 531 (Kennedy, J., concurring)* ("[T]he justification for *8 U.S.C. § 1226(c)* is based upon the government's concerns over the risk of flight and danger to the community").

61. Given the gravity of the liberty deprivation when the government detains individuals, due process requires that the government bear the burden of proof by clear and convincing evidence for detaining an individual, particularly after that detention has become prolonged. *Cf. Velasco Lopez v. Decker, 978 F.3d 842, 856 (2d Cir. 2020). (stating, for an 8 U.S.C. § 1226(a)* prolonged detention claim, "it is improper to allocate the risk of error evenly between the individual and the Government when the potential injury is as significant as the individual's liberty.
Accordingly, we conclude that a clear and convincing evidence standard of proof provides the appropriate level of procedural protection.").

62. Consistent with these principles, the WDNY has found that, where a particular detained person's mandatory detention becomes unreasonably prolonged, due process requires the government to show, by clear and convincing evidence, that

## PRAYER FOR RELIEF

**WHEREFORE**, I respectfully pray that this Court:

1. Assume jurisdiction over this matter;

2. Grant a Writ of Habeas Corpus directing the Respondent to release me from further unlawful detention;

3. Enter preliminary and permanent injunctive relief enjoining Respondent from unlawfully detaining me any further;

4. In the alternative, issue a conditional writ of habeas corpus requiring Respondent to provide me with an individualized bond hearing before a neutral arbiter at which Respondent must bear the burden of establishing by clear and convincing evidence that my continued detention is justified;

5. Order that in considering my detention, the Court should require respondents must consider alternatives to detention and my ability to pay when setting a monetary bond;

6. Grant such further relief as the Court deems just and proper.

    I affirm, under penalty of perjury, that I am the petitioner, I have read this petition or had it read to me, and the information in this petition is true and correct.

*Aaron A. Stahl*
12/12/2024

Aaron A. Stahl
Notary Public, State of New York
Reg. No. 01ST0013537
Qualified in Orleans County
Commission Expires September 14, 2027

Respectfully Submitted,

_____
Dondre Foster A#063-735-118
Buffalo Federal Detention Facility
4250 Federal Drive
Batavia, New York 14020

DATED: 12/12/24
Batavia, NY

# CERTIFICATE OF SERVICE

I, hereby certify that on December 10th, 2024, I caused to be served a true copy of the

### PETITON FOR WRIT OF HABEAS CORPS

**X** By sending via USPS First Class mail to:

### UNITED STATES DISTRICT
### 100 STATE STREET
### ROCHESTER, NY 14614

One copy of the above documents was addressed and mailed to:

I certify under the penalty of perjury that the foregoing is true and correct pursuant to 28 U.S.C. § 2241.

Respectfully Submitted,

Aaron A. Stahl  /s/

12/12/2024

Aaron A. Stahl
Notary Public, State of New York
Reg. No. 01ST0013537
Qualified in Orleans County
Commission Expires September 14, 2027

%JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

24CV6728

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Dondre Foster

**DEFENDANTS**
Jeffrey Searls in his official capacity as Officer-in-Charge of the Buffalo Federal Detention Facility

(b) County of Residence of First Listed Plaintiff: Genesee County
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: Genesee County
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Pro Se

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)
- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☒ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. § 2241
Brief description of cause:
Ongoing detention violates due process

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE _____ SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**
RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

[Print] [Save As...] [Export as FDF] [Retrieve FDF File] [Reset]

