UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DONDRE FOSTER,

                              Petitioner,                  Case # 24-CV-6728-FPG

v.

                                                                             DECISION AND ORDER

DIRECTOR BROPHY, et al.,

                              Respondents.
_____

## INTRODUCTION

*Pro se* Petitioner Dondre Foster brought this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging his continued detention at the Buffalo Federal Detention Facility. ECF No. 1. On February 11, 2025, the Court granted the petition insofar as it ordered Respondents to hold a bond hearing for Petitioner, at which the government would bear the burden of proving "by clear and convincing evidence that Petitioner's continued detention is justified based on his present risk of flight or danger to the community." ECF No. 7 at 2. On March 7, 2025, Immigration Judge ("IJ") Eric Schultz held the ordered hearing. He found that the government had sustained its burden of proving that continued detention is justified. ECF No. 18-2 at 2-10.

Petitioner has now filed a motion requesting his immediate release on the ground that the hearing did not, in fact, comply with the Court's order. ECF No. 16. The government opposes the motion. ECF No. 18. For the reasons that follow, Petitioner's motion is DENIED.

## BACKGROUND

The following facts are taken from the record. IJ Schultz held the ordered bond hearing on March 7, 2025. At the hearing, Petitioner was represented by counsel, Rosalie Capps, *see* ECF No. 18-5 at 3, and IJ Schultz admitted a number of exhibits related to Petitioner's criminal history, rehabilitation, and community support. Petitioner also testified at the hearing. He admitted that,

1

since his entry into the United States, he had been convicted of three crimes.  First, in March 2017, Petitioner was arrested on, and later convicted of, a charge of third-degree strangulation, which arose from Petitioner's assault on a romantic partner.  *See* ECF No. 18-5 at 13.  Under the applicable state law, that offense occurs when a person "recklessly restrains another person by the neck or throat or obstructs such other person's nose or mouth and impedes the ability of such other person to breathe or restricts blood circulation of such other person."  Conn. Gen. Stat. § 53a-64cc(a).  Second, during his release on that pending charge, in August 2017, Petitioner was arrested for possessing a weapon in a motor vehicle—specifically, a machete.  ECF No. 18-4 at 43; ECF No. 18-5 at 19.  Petitioner testified that the machete was used for landscaping work.  *Id.*  Plaintiff was convicted of both of these charges in March 2018.  ECF No. 18-4 at 41.  Third, approximately one month after his conviction on both charges, Petitioner was again arrested, this time for the sale of heroin, *id.* at 43, which occurred when police stopped a vehicle leaving the scene of a shooting.  *Id.* at 55.  Petitioner was driving the vehicle and transporting the victim.  *Id.*  Petitioner had 94 "glassine folds" containing heroin under the driver's seat.  *Id.* at 55-56.  Petitioner was convicted in April 2019.  *Id.* at 43.  Petitioner was not arrested or convicted of any offense from the time he was released in August 2019 to his transition into immigration custody in March 2024.  ECF No. 18-5 at 26.

At the hearing, an issue concerning Petitioner's violation of a release condition was discussed.  While Petitioner was released on $10,000 bond in connection with his narcotics charge, a judge found that he had violated a release condition requiring him to complete a drug-treatment program.  ECF No. 18-4 at 50; ECF No. 18-5 at 22.  Petitioner testified that he was not at fault for the violation: a case worker failed to give him the necessary documentation to enroll in the program, which prevented him from satisfying the release condition.  ECF No. 18-5 at 22.

The government argued that Petitioner presented a risk of both flight and danger. As to flight, the government highlighted Petitioner's order of removal. *See id.* at 32. As to risk of danger, the government focused on Petitioner's overlapping arrests and convictions. *Id.* at 31. Petitioner's counsel responded that Petitioner had demonstrated rehabilitation, such that the prior arrests and convictions no longer supported an inference of risk of danger. *See id.* at 33-34. Counsel also noted Petitioner's community ties, infant son, and pending immigration appeals, all of which demonstrated that he had a "vested interest" in appearing for further proceedings. *Id.* at 35.

On March 11, 2025, IJ Schultz issued his decision denying bond. ECF No. 18-2 at 2-10. He was satisfied by "clear and convincing evidence" that Petitioner posed a danger to the community. *Id.* at 7-8. IJ Schultz relied primarily on Petitioner's criminal history, and in particular the fact that "two of his convictions stemmed from arrests made while [he] was either released on his own recognizance or on bond." *Id.* at 8. IJ Schultz did not find it salient that there was a "lapse of time" subsequent to those convictions. *Id.* He reasoned that Petitioner had demonstrated a "lack of accountability and disregard for the law" by blaming the violation of his release conditions on a case worker. *Id.* He wrote, "Stated succinctly, [Petitioner's] inability to take ownership and responsibility or his own actions that led to violation of his release while in criminal proceedings, coupled with a troubling history of serious arrests and resulting convictions in a very short period of time, cause this Court to conclude that [the government] established that he poses a danger." *Id.* IJ Schultz also found, by clear and convincing evidence, that Petitioner posed a risk of flight, in light of Petitioner's non-meritorious removal defenses and criminal history. *Id.* at 9. IJ Schultz was further persuaded that no alternatives to detentions would mitigate these risks. *Id.* at 10.

## DISCUSSION

Petitioner argues that IJ Schultz did not comply with this Court's order, and he requests immediate release as the appropriate remedy for the alleged noncompliance. ECF No. 16. Having reviewed the record, the Court concludes that Petitioner's arguments lack merit.[1]

First, Petitioner contends that IJ Schultz "treated the hearing as a bond redetermination request" governed by the relevant immigration statutes, as opposed to constitutionally mandated hearing subject to additional procedural protections. *Id.* at 2. This accusation is not supported by the record: although IJ Schultz discussed the statutory standards for detention, he made clear he was applying the constitutional standards mandated by this Court and the Second Circuit's decision in *Black v. Decker*, 103 F.4th 133 (2d Cir. 2024). *See, e.g.*, ECF No. 18-2 at 4-5, 10. While there may be an issue as to whether IJ Schultz properly *applied* those constitutional standards, the Court finds no basis to support Petitioner's claim that IJ Schultz "treat[ed] the hearing as a Bond Redetermination Request governed by the [immigration statutes]." ECF No. 16 at 9.

Second, Petitioner claims that IJ Schultz was not a "neutral decisionmaker." ECF No. 16 at 12. The basis for this accusation is unclear from Petitioner's papers. There is no evidence in the record that IJ Shultz engaged in conduct disclosing "bias or hostility" towards Petitioner. *Islam v. Gonzalez*, 469 F.3d 53, 55 (2d Cir. 2006) (finding that immigration judge conducted himself with an appearance of bias and hostility where he was "argumentative, sarcastic, impolite, and overly hostile manner that went beyond fact-finding and questioning"). At most, Petitioner seems to believe that IJ Schultz displayed a lack of neutrality due to the manner in which he weighed, and drew inferences from, the evidence. That is insufficient. *See Hauschild v. United States Marshals Serv.*, No. 23-778, 2024 WL 158899, at *3 (2d Cir. Jan. 12, 2024) (termination process

---

[1] Respondents raise several preliminary objections to Petitioner's motion, including that he failed to exhaust his administrative remedies and that the Court lacks jurisdiction to review the immigration judge's order. *See* ECF No. 18 at 3-7. The Court rejects these arguments for the reasons it has articulated in prior cases. *See, e.g., Gutierrez Cupido v. Barr*, No. 19-CV-6367, 2020 WL 103477, at *2-3 (W.D.N.Y. Jan. 9, 2020).

was not conducted in bad faith simply because contractor "disagree[d] with [the agency's] assessment of the seriousness of his conduct" and the "appropriate disciplinary consequences").

Third, Petitioner argues that IJ Schultz improperly admitted evidence relating to his convictions, including his "indictment and the RAP sheet," as they contained hearsay and consisted of mere "alleged conduct." ECF No. 16 at 14.  As a matter of due process, however, Petitioner has failed to show that such evidence was so unreliable or untrustworthy as to render his hearing fundamentally unfair. *See Aslam v. Mukasey*, 537 F.3d 110, 114 (2d Cir. 2008) (stating that the Rules of Evidence "do not apply in removal proceedings" and that evidence is "admissible provided that it does not violate the alien's right to due process of law"). The use of police and prosecutorial records to assess a noncitizen's dangerousness is considered permissible, *see, e.g.*, *Davis v. Garland*, 708 F. Supp. 3d 283, 297 (W.D.N.Y. 2023), so long as the noncitizen receives a full opportunity to submit rebuttal evidence and argument. *Cf. Aslam*, 537 F.3d at 115.  Petitioner had a full opportunity to submit any evidence he wished contesting the claims made in these court records, including a full opportunity to testify about his criminal history.[2]  This is not a case where Petitioner was denied a "full and fair" opportunity to press his position.[3]   *Id.*; *see also Blandon*, 434 F. Supp. 3d at 41-42 (finding that immigration judge's decisions regarding admission of evidence violated due process where, in substance, the judge's rulings constituted an "utter refusal . . . to consider any evidence submitted by [the noncitizen]").

---

[2] Petitioner separately argues that IJ Schultz erred by *giving* him an opportunity to submit evidence prior to the hearing, believing that doing so effectively shifted the "burden of proof."  ECF No. 16 at 22.  The Court disagrees.  An opportunity to be heard and present evidence is the essence, not the antithesis, of due process.  To the extent Petitioner faults IJ Schultz for imposing a deadline for submissions, he articulates no prejudice he incurred as a result of that deadline.

[3] Petitioner further asserts that IJ Schultz "penalized" him for invoking his right to remain silent when questioned about his prior convictions.  ECF No. 16 at 13.  To the contrary, IJ Schultz expressly declined to "apply an adverse inference as a result" of Petitioner's invocation of said right.  ECF No. 18-2 at 7.  Likewise, Plaintiff's claim that IJ Schultz outright ignored Petitioner's supportive evidence finds no basis in the record.  *See* ECF No. 18-2 at 3-4, 8-9.

5

Fourth, Petitioner asserts that his prior criminal convictions cannot, standing alone, suffice to substantiate the government's burden.  *See* ECF No. 16 at 2-3.  To be sure, the mere fact that a person was convicted of a crime in the past does not necessarily support the conclusion that such person is presently a danger to the community.  *See, e.g.*, *Blandon v. Barr*, 434 F. Supp. 3d 30, 39 (W.D.N.Y. 2020).  But "[c]ourts have routinely looked to an individual's past conduct"—including criminal history—"for purposes of predicting his or her future conduct."  *Sheriff v. Searls*, No. 21-CV-6073, 2021 WL 6797495, at *5 (W.D.N.Y. Aug. 16, 2021) (collecting cases).  The *Blandon* case, on which Petitioner relies, makes this very point.  *See Blandon*, 434 F. Supp. 3d at ("[P]ast criminal convictions, particularly of violent offenses, are critical to evaluating . . . the individual's *current* threat to the community").  Put simply, although an immigration judge may not invoke a presumption of "once dangerous, always dangerous," he is free to  assess whether a detainee's past criminal behavior suggests "future dangerousness" and thus justifies continued detention.  *Sheriff*, 2021 WL 6797495, at *5-6.

On this issue, the record fails to substantiate Petitioner's claim that there was insufficient evidence that he posed a danger to the community.  *See* ECF No. 16 at 11 (stating that the record cannot possibly support the conclusion that he is "too dangerous to be released").  In reviewing the IJ's determination as to danger to the community, the Court's task is narrow: it is to determine whether Respondents complied with the Court's Decision and Order, not to review the hearing evidence *de novo* and determine whether Petitioner in fact presents a danger to the community.  *See Nguti v. Sessions*, No. 16-CV-6703, 2017 WL 5891328, at *2 (W.D.N.Y. Nov. 29, 2017) (collecting cases).  Thus, the question is "whether the immigration judge relied upon proof that could not possibly establish by clear and convincing evidence" that Petitioner presents a danger to the community.  *Id.*  The clear-and-convincing burden of proof "requires the government to prove

6

that a factual contention is highly probable." *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 240 (W.D.N.Y. 2019) (internal quotation marks omitted).

Contrary to Petitioner's argument, the Court concludes that IJ Schultz could reasonably find that Petitioner presented a risk of danger to the community. Petitioner was admitted into the United States in July 2014. ECF No. 18-4 at 43. Less than three years later, Petitioner was arrested for strangling a romantic partner, which resulted in the first of three convictions over three years. *Id.* One was for the possession of a machete, and the other pertained to the sale of narcotics and arose out of a shooting. Petitioner's criminal history thus permits the inference that he is willing to engage in violent and/or dangerous conduct. Moreover, as IJ Schultz noted, the fact that Petitioner engaged in repeated criminal activity while released on bond permits the inference that Petitioner either is willing to disregard, or at least lacks the necessary self-restraint, to comply with release conditions calculated to protect the community from danger. *See* ECF No. 18-2 at 8.

To undercut the negative inferences that could be drawn from his convictions, Petitioner could reasonably rely on the lack of criminal history subsequent to the completion of his most recent probation, as well as his other evidence of rehabilitation. These are entirely valid factual arguments to make, and, indeed, IJ Schultz acknowledged this contrary evidence. *See id.* at 8 (noting the "lapse of time" between Petitioner's convictions and "today"); *id.* (describing Petitioner's evidence of rehabilitation). One could reasonably conclude, as Petitioner argues, that his prior dangerous criminal activity does not suggest future dangerousness because of his intervening rehabilitation. *See* ECF No. 16 at 13.

Nevertheless, as the Court discussed above, the existence of evidence to support Petitioner's position does not render IJ Schultz's contrary conclusion unsupportable. The Court is not tasked with assessing whether Petitioner or the government has the better argument; the only question is whether IJ Schultz's conclusion "relied upon proof that could not possibly establish by

7

clear and convincing evidence" that Petitioner presents a danger to the community. *Nguti*, 2017 WL 5891328, at *2. Whether Petitioner rehabilitated himself sufficiently as to ameliorate all concerns that he would engage in the type of violent and/or dangerous behavior displayed by his criminal history is a factual question—as is the question of whether Petitioner's explanations for his criminal conduct were credible. These questions were for IJ Schultz to determine based on all of the record evidence. While the Court does not necessarily endorse IJ Schultz's conclusions—and, indeed, might have given more weight to the "substantial evidence of rehabilitation" that Petitioner has demonstrated, ECF No. 18-5 at 33—the Court cannot conclude that they lack sufficient support in the record as to show that IJ Schultz failed to apply the clear-and-convincing standard mandated by this Court's order.[4] *See Davis*, 708 F. Supp. 3d at 297 (noting that the district court "cannot revisit the weight the [immigration judge] assigned to any particular piece of evidence"); *Sheriff*, 2021 WL 6797495, at *6 (stating that a district court "may not second-guess" an immigration judge's weighing of the evidence). Accordingly, Petitioner is not entitled to release on this ground.

Fourth, and for largely the same reasons as above, the Court finds IJ Schultz's consideration of alternatives to detention adequate, and it rejects Petitioner's contrary arguments. *See* ECF No. 16 at 3, 15-22. IJ Schultz reviewed ICE's monitoring programs and reasonably found that they would not prevent criminal activity; at best, they could monitor where Petitioner was but not what he "might be doing, *e.g.* whether [he] is in possession of or selling controlled substances." ECF No. 18-2 at 10. Although Petitioner believes that IJ Schultz should have given more weight to his previous rehabilitation on probation, and should have considered whether additional rehabilitative programming could curb any tendency toward criminal activity, *see* ECF No. 16 at

---

[4] Petitioner also claims that IJ Schultz erroneously evaluated his risk of flight. Because the Court has concluded that Petitioner's continued detention is constitutional in light of IJ Schultz's finding of dangerousness after a procedurally proper hearing, it need not address the issue of risk of flight.

19-21, IJ Schultz reasonably concluded that Petitioner's criminal activity was a function of Petitioner's "disregard for the law" and "proclivity to re-engage in criminal behavior," ECF No. 18-2 at 8, 10, as opposed to a symptom of a discrete, remediable issue like addiction or anger management. As a result, IJ Schultz committed no error by "failing to assess [] alternatives to detention not within ICE's typical programs," like a "cognitive-behavioral program." ECF No. 16 at 19. At bottom, Petitioner has not shown that IJ Schultz failed to consider alternatives to detention, or that his consideration of said alternatives was inadequate as a matter of law. Therefore, relief is unwarranted.

In sum, Petitioner has not demonstrated that Respondents violated the Court's order or that release is otherwise warranted.

## CONCLUSION

For the reasons stated herein, Petitioner's motion to enforce the judgment (ECF No. 16) is DENIED. This case remains closed.

IT IS SO ORDERED.

Dated: August 21, 2025
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York